US 1st District Court

STATE OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H
FILED

2015 SEP 24 A 11: 26

Merrimack County, SS                                    Circuit Court, SS

**Plaintiff**

Ms. Brett (Brooke) Sonia                Case No. 15-fp-398

V.

**Defendant**

Ms. Debra Green Et al.

## COMPLAINT

Plaintiff claims as cited within are but not limited to the following;
1. Deliberate indifference to plaintiffs mental health needs.
2. Practicing medicine without a license.
3. Erroneously entering the wrong information into official records.
4. Refusal to appropriately seek the assistance of Specialist
5. Improper and unethical treatment of plaintiff in her dealing with plaintiff.
6. Any other claim not cited herein that may be lawful.

## JURISDICTION

This is a civil action authorized by law and the 42 U.S.C. sec 1983 to redress the deprivations of plaintiffs rights to adequate Medical care by the state of New Hampshire and its agents, and deprivation of rights secured by the US Constitution. Both State and Federal courts have Jurisdiction under 28 USC sec1891 (b)(2), Because it is where events giving rise to plaintiffs claim occured.

## PLAINTIFF:

Plaintiff, Ms. Brett (Brooke) Sonia is and was at all times mentioned herein a prisoner of the State of New Hampshire and in the custody of the Department of Corrections of said State. (NHDOC)

1

DEFENDANTS:

Deborah Green Et al, is and was at all times mentioned herin an agent of the State of New Hampshire, for the Mental Health Department. Defendant(s) are responsible for the every day care of the plaintiff and her mental health needs. All Defendants are sued in their individual and official capacities.

At this juncture the term "Et al" is to be used to ascertain whether there are other officials whom are mistreating the plaintiff.

FACTS:

On or about 13 July 2015, the NHDOC held its second "Gender Dysphoria group" This was the intent at the time and the understanding of the plaintiff as she had settled with the NHDOC previously for the institution of assistance for Gender Dysphoric inmates. However, it has been stated that the "Group" was NOT for that purpose after the Defendant told the plaintiff that she needed to have a copy of her settlement to get the group started. Which only led to the plaintiffs belief that this was the "medical treatment" she was to recieve for her settlement. The NHDOC still has not began their attempt to institute the Original group for Persons <u>Diagnosed with Gender Dysphoria</u> in violation of the plaintiffs rights and the settlement agreement.

Ms. Green has blatantly disregarded the settlement agreement, and had the plaintiff enter into a group with individuals to whom she does not agree, as they do not carry a Diagnosis. They may be some kind of disconnect with those inmates but they do not fit into the plaintiffs agreement as to treatment options, Furthermore, the NHDOC has been told through Ms. Green that the plaintiff was <u>uncomfortable</u> with the particular inmates in the same group and Ms. Green did not care, AND that she had the plaintiff enter into "treatment" without the proper knowledge of the group and who would be in it. There bypreserving the plaintiffs rights on whether to accept or reject that treatment.

Ms. Green has thereby subverted the law, in that she made a group for persons without fulfilling their informational needs so plaintiff could accept or reject the treatment offered. This violates Due process and the 8th Amendment rights of the plaintiff, as well as anyothers who were unavailed of the law at the time Ms. Green decided to " do things her way."

FACTS:

Ms. Green has on numerous occasions entered errors into the plaintiffs records during the past years. When the plaintiff has sought the advice and counseled Ms. Green on the issue she has remained indifferent. Even when that information is clearly erroneous and false.

Ms. Green stated on the record that the Plaintiff "does not meet the criteria for a diagnosis of gender dysphoria." This led to many months of suffering. Ms. Green was indifferent to plaintiffs suffering at the time and incapable of making that determination as she was and still is not an expert on the subject of Gender Dysphoria. The plaintiff sued in Federal court, and the NHDOC ordered a specialist after about 18 months and the specialists finding was that the Plaintiff infact does have Gender Dysphoria!

Ms. Green has further made allegations in her reports that the Plaintiff was the "Nom de Plume" of an e-mail sent years ago and factually lied about it to the record in her adamant refusal to seek further aid for her client, the Plaintiff. This can be easily verified, but Ms. Green chose to opt for the denial thinking that plaintiff would abandon her claims of Gender Dysphoria.

Ms. Green has inaccurately portrayed the records, this much is palpable and what is to be done of it? The plaintiff seeks Justice for suffering those Months away, while she was not honest with the plaintiff and could have opted to state her belief to the plaintiff. That further shows that Ms. Green is palpably ineffectual as a therapist and should be removed before she can cause further harm to those who need care.

Furthermore, Ms. Green seems to think that by grouping persons together who assert they have Gender Dysphoria, with those who truely do, the state can save time and money without actually giving those FEW truely Gender Dysphoric inmates the actual psychotherapy they need. The plaintiff wants the court to understand she did not come to the NHDOC with a diagnosis, and the persons incharge of seeing that she get care, do not know what to do to care for her.

The criteria for entry into the group must be that they have a diagnosis and are getting actual treatment for their disorder. This will ensure that persons whom do not need it do not get access to the information that could hurt the participants of the alleged treatment. Inorder to do this, the NHDOC has to allow only those with the diagnosis to enter into therapy. This will protect and serve the Gender Dysphoric community. There are 2 TWO inmates who carry the diagnosis in general population at the moment.

Facts;

(The plaintiff has been instrumental in the inception of the "group" for the benefit of gender dysphoric inmates.) This would ease their suffering in that they would have a place to share their unique problems and learn from oneanother. What then is the purpose of bringing in persons who claim to be Gender dysphoric? That is impermissible and a violation of the rights of those who partake in the therapy. An inmate was allowed to enter the first group who returned to the unit and told everyone HE knew about the group, who was in it and what they were trying to accomplish." That is a direct violation of the plaintiffs rights to "Confidentiality" and why the plaintiff does not want to enter into therapy with prurient individuals.

By NHDOC staff allowing the inmates to enter into the "Group" they have "Outed" the plaintiff with other inmates because the plaintiffs right to privacy has been compromised when they allowed the inmate in question to enter that group!

Ms. Green is a "social worker" she made the error of entering into the record that the plaintiff does not meet the criteria for a diagnosis of GD and was not a specialized Doctor able to make such a determination. She has in fact practiced Medicine without a license and that is a violation of the plaintiffs rights. Diagnosis is the province of "Doctors" NOT a social worker. Ms. Green should've requested that a specialist be seen when the original complaint for aid was made. The Policy supports this, the law supports this. Instead, she chose to Ignore the plaintiffs needs based upon her unprofessional judgement.

When the plaintiff asked Ms. Green about treatment and options, Ms. Green replied that, "I do not know, I am not an expert on this and I have no experience in this area, it's not my area of expertise." The plaintiff then wondered how she was going to get the assistence she needed. Not until suit was made was the Specialist ordered to ascertain if the plaintiff suffered from GD.

PLaintiff has requested several times for a reassignment to a more amenable therapist and no aid has been forthcomming to date.

STATEMENT :

The plaintiff settled her constitutional rights to have these groups and aid in the form of Medical and Mental Health care provided for her and her "Sisters" this is in the best interests of the NHDOC and those with Gender Dysphoria. And the State has yet to fulfill its part of the settlement deal.

## STATEMENT:

The settlement agreement is a legally binding contract with the plaintiff and must be adhered to. Courts have consistently held that, "When the promise or inducement of a right is given up in exchange for a promise, (such as the plaintiffs) it is held that, that promise must be adhered to."

In support refer to;
<u>US V. Andis</u>, 333 F3d 886, 891-92 (8th cir 2003)  " A criminal defendant has a right to appeal despite waiver." Although this case points to a criminal conviction it is the "contract" that was broken and therefore allowed appeal.
In <u>Santobello V. New York</u>, When a plea rests in any significant degree on a promise of the prosecutor (Attorney General) so that it can be said to be part of the inducement or consideration, such a promise <u>MUST</u> be fulfilled."
In <u>United States V. Benchinal</u>, US 105 Sct 2103, 2105, Led (1985)  "When the Government agrees to a recommendation, it <u>MUST</u> carryout its part of the bargain."
In <u>Brady V. United States</u>, 397 US 742 (1970) "It does not matter that the promise was made in good faith, what matters is that it was relied upon and unfulfillable."
In <u>Whalen V. Roe</u>, 429 US 589, 51 LEd2d 64, 97 Sct 869 (1977)  "The right to privacy includes individual interest in avoiding disclosure of personal matters."

The "Deal" as the settlement agreement clearly states is that, "Inmate attending the Group <u>have a diagnosis</u> of Gender Dysphoria."
The NHDOC is either Lying to protect their interests in that they did not know what to do, or that they realized they have erred so terribly that they now cannot make up for the disclosure of personal matters by persons whom should never have been there in the first place. This is what happenes when one seeks to opt out and not provide what the agreement is for.
The fact that Ms. Green has a blatant disregard for the truth and that the Administration does not seem to know what to do with the plaintiff and get her the treatment she needs, the plaintiff is forced to seek Judicial aid.

Plaintiff did not want this to go this far and fears retribution by the staff at the prison in many different forms.  And further states;
It is obviously a money saving technique to have any of the persons that the Mental Health Dept deems necessary to give prurient inmates the same group therapy they give transgender inmates.  However the Admin seem to miss the underlying situation, Gender Dysphoria Is <u>NOT</u> about sex!

5

STATEMENT :

It is about a persons <u>GENDER</u> and cannot be allowed to be mixed up with the claims of prurient sex offenders, that they are the same. They are not! They seek to gain access to womens undergarments for their sexual purposes and they seek to find this access by attending groups and interupting the lives of the Plaintiff and others like her. The plaintiff will provide a report if necessary to confirm this.

Now because the plaintiff has made a renewal request to the court so that they can uphold the settlement agreement, staff has been indifferent to the plaintiff and her needs. There have been many instances of late that are not right and the plaintiff does not wish to complain of them at this time but that she reserves them for future arguement.

Ms. Green has been indifferent to the plaintiff ever since she has recieved a positive diagnosis for Gender Dysphoria. Her attitude towards the plaintiff has changed in General and she is distanced and cold when she deals with the plaintiff. This is recognized in <u>All</u> therapy aspects of the plaintiffs dealings with Ms. Green. For instance, Ms. Green will ignore the plaintiff when she attends groups for The SPMI class, she will not give the plaintiff a pencil for whatever reason and she claims to "innocently" have done so when the plaintiff makes her displeasure known about the adversional treatment. This clearly displays the disdain Ms. Green Has for her client, Ms. Brett (Brooke) Sonia.

Ongoing therapy is extremely important and since the plaintiff cannot seem to get through to Ms. Green she has requested another therapist, to which the NHDOC has yet to reply to. See Exhibit X

Plaintiff truly believes that she cannot stay here in New Hampshire as she has forced too much from the Administration to care for her needs. This would not be a Healthy Place for her after all the dust settles. That much is clear.

Plaintiff <u>Does NOT</u> trust Ms. Green and has no faith that she will not try to place other erroneous statements into the record/should she be forced to continue therapy with her. Many inmates over the recent years have dropped out of therapy because of Ms. Greens attitude towards our ever changing needs. This cannot be allowed to continue.

6

ARGUEMENT :

It is clearly established that the New Hampshire Deptartment of corrections (NHDOC) has violated the plaintiffs rights in many ways. Firstly, the NHDOC has broken the settlement agreement with the plaintiff as far as their ability to institute a group for those with Gd by a specific date and allow for (2) <u>two groups to be held within the year</u> approximately (6) six months apart. The NHDOC <u>cannot</u> institute this requrement now that the 2015 year is nearly over! The NHDOC would have to realistically elongate the year by atleast (90) ninety days inorder to comply. This is a physical impossibility!

   The plaintiff has tried to make known her desire to have the NHDOC get the settlement agreement on track without any hassle but the administration seems to believe that the plaintiff is no longer due her Constitutional rights since settling. See <u>Aerolinas-Argentinas V. US</u>, 77 F3d 1564 (Fed cir 1996) The court held that, "A <u>regulation cannot override</u> a clearly stated statutory enactment."

In <u>Cherokee Nation V. Babbitt</u>, 117 F3d 1489 (D.C. cir 1997) "An agency is <u>required</u> to follow its own regulations."

   Plaintiffs right to enforce her settlement agreement through the issuing court does not require New PLRA standards be met as it is the refusal of the original issue that is at hand.
The PLRA requirements have already been met for this case and the NHDOC seems to wantonly disregard the plaintiffs rights when it is advantageous to do so.

   Secondly, the NHDOC refuses to send the plaintiff for further treatment options with a "Hair removal" expert which was part of the plaintiffs original complaint. The plaintiff stated that she was in need of"Necessary Medical Care" and that medical care shall not be withheld! This was at the forefront of the plaintiffs original motion and the reason for her renewed Motion for Contempt.

   Plaintiff requires the Court to ascertain the best place for the placement where the plaitiff can have the care she needs and requires per her specific disorder. The NHDOC holds that a natal male transitioning from male to Female does not need hair removal,

7

Arguement ;

The NHDOC has done so <u>without</u> the assistance of a Gender Dysphoria Specialist to truly determine that the plaintiffs request for hair removal is infact necessary. The rights of the plaintiff have once again been violated by the NHDOC in this regard. No-one has sat with her to determine that this is infact a serious need (or not) and that the persons making the policy of denying this treatment option (s) to the plaintiff are not qualified to do so. They are merely making snap judgements without due process.

Thirdly, Now that the systemic and consistent denials of any treatment for her further suffering have been addressed, the plaintiff requests a move out of state where there are other persons living with their gender dysphoria and getting the treatment that the plaintiff requests. It is unclear whether the NHDOC will undertake to avail the plaintiff of this option.

Given the recent complaints from the plaintiff, the NHDOC is an inhospitable place for her to live because she cannot have a job or be given the necessary hair removal, or live consistent with her gender identity in the NHDOC.

The NHDOC would have the court believe that they are compassionate to the needs of the GID community but the fact remains, they simply do not know how to care for us.

Lastly, The plaintiff would like the court to know that she can and will be willing to <u>prove</u> the NHDOC claims, that their "security concerns" are realistically false and therefore hold no weight. A simple walk through the prison compound with the plaintiff, and the Justice will understand. Furthermore, the plaintiff is willing to speak with a Federal prosecutor as to the level of inadequacy of "security" that the NHDOC claims in their adamant denials and refusals for plaintiffs claims. Simply put, the plaintiff can and will cite <u>MAJOR</u> defeciencies for the examination of the Federal authorities as an attempt to have them understand the truth of the so called "Security concerns" the NHDOC cxlaims would be present if they treated the plaintiff. Thusly, the plaintiff would be better off in another State.

8a                          ARGUEMENT :

Per the United States constitution art 1, sec 10 which states;
"NO state shall pass any law imparing the OBLIGATION of contracts."
 It goes further to state that, States maylegislate upon contracts but he laws MUST NOT impair the obligation of such contracts.
 The Justices found that; "The obligation of contracts is co-extensive with the duty of performance." In supprot see;
Ogden V. Sanders,Sct 25 US 213; 6, LEd 606; (1827) US LEXIS 394; Wheat 213, (March 13 1827)

 Plaintiff thusly has every right to expect the Defendants to adhere to the settlement agreement terms. And when the impossible has happened that the defendants cannot supply the requsite terms? Infact the settlement agreement terms have been broken. The NHDOC cannot go back into time and undo the impossible, and their cessation of their unconstitutional treatment of the plaintiff and her medical needs does not moot the point the plaintiff has continuously been denied her rights. Anything that would allow the NHDOC to continue their outright denials of necessary medical treatment would be considered illegal.

 Per Section 11.6 (the constitutional rights of prisoners) the court has the jurisdiction to remove the plaintiff (free her) from the powers that are holding her under conditions that deprive her of her rights guaranteed by the Federal constitution.
Plaintiff does not ask for release, this would be ludicris upon its face and the plaintiff only seeks the move to a state prison whereby she can obtain the neccesary care for her gender Dysphoria. This can be achieved with an out of state transfer, where she can avail of the programs, services, JOBS and medical treatments she needs to transition to a healthy woman. This would be within the security concerns of the NHDOC and the best interest of the plaintiff.

Plaintiff offers this as terms for her release from the claims she has made against the NHDOC. Should the terms be broken and denied, then full responsibility by all parties will be assumed.

## REQUESTED RELIEF:

The defendants have repeatedly violated the plaintiffs rights to adequate medical treatment in many regards, through their unprofessional ethics and their inability to ascertain that the inmates have rights that are being ignored in the interest of saving money or the sense of ease.

Irreprable harm has been suffered in the form of anxiety, sleeplessness, etcetera and the Staff at the NHSP-Men are to blame since it is they whom are charged with providing that care in accordance with the law.

Ms. Green has not once offered an apology for any of her actions no matter how simple. It is always the inmates fault andwe are just "Crazy" afterall. That is the justification they may try to use but it is not excusable!

The total disregard for the plaintiffs rights and her settlement agreement cannot be allowed. The defendant does not have the authority to disregard the settlement agreement for any reason, or in any form.

When counseled, Ms. Green said that the plaintiff does not have the right to determine who goes into the group, that it was she who did. While that may be a half truth, the plaintiff has the right to enforce her settlement agreement and to the necessary information to any treatment she is offered, so that she may make a decision as to whether or not she wants that treament. THAT, is the LAW. Ms. Green denied this to the plaintiff and others when she led the plaintiff to believe that she was attending the group she had started without prior knowledge of anyother groups or persons attending.

Plaintiff will not attend "psychotherapy" in a group setting let alone with prurient inmates who seek to undermine her life in any fashion. Thereby, the NHDOC is not providing the necessary medical care for plaintiffs GD.

This makes the Defendant knowing and willing to deny plaintiff her constitutional right per the settlement agreement, 42 USC sec 1983 and 1985.

In Jane Doe V. Electro craft corp, ESMH 3013-86 (NH) "Transexualism is a handicap (mental) as defined in RSA354-A:3xIII and the New Hampshires law against discrimination prohibits employment "discrimination" on the basis of handicap."

The question remains, "Did the NHDOC discriminate against the plaintiff in that she is now identifying as transgender?"

The NHDOC has been adamantly worse now that the plaintiff has sued for her right to be whom she is,

9

# INMATE REQUEST SLIP

Submit this request to the Unit Supervisor, Security Lieutenant, or CC/CM. Your Unit Supervisor, Security Lieutenant, or CC/CM will help you resolve the issue or it will be forwarded to the appropriate person. Unit Supervisor, Security Lieutenant, or CC/CM will be forwarded to you.

TO: Unit Supervisor, Security Lieutenant, CC/CM   DATE: 8-4-15

FROM: Sonia   Brett   (Brodie)   ID #: 28484
       Last Name   First Name   Middle Initial

Facility: MCN   Housing Unit: 1C   Cell: 7B   Work/Shift: B

INMATE REQUEST: This is my 2nd Request and my final attempt to request a change in Mental Health clinicians. Due to ongoing litigation, its best to Reassign me to another clinician. I Do NOT believe Ms. Green can (or is willing) to help me anymore. Given how inaccurate Reports in my Records, I have no faith in her and our Relationship is compromised.

Sure I have issues, but in order for patients to undergo tx, they MUST be able to trust their therapists. It has been 3 weeks without an answer from Dr. Fellows on whether he will assign Betsy to me or not. I am in need of counseling, I am spmi and Betsy cannot help me anymore.

(I've kept a copy of this Request)   Thank you —
(If you need more space, use plain paper.)
                                                    Inmate Signature

TO: Dr. Dan Polenza   DATE:

FROM: Unit Supervisor, Security Lieutenant or CC/CM

REMARKS:

                                                    Staff Signature
*********************************************************************************

FROM:   DATE:
     Staff Member Name/Office

REMARKS: No Ans to Date

cc/File

                                                    Staff Signature

                           Received By
                                                    Inmate Signature

White - Offender Records Office     Yellow - Inmate     Pink - Staff     SP-014 (a) Rev. 11/06

LEGAL DEFINITIONS:

The definition of "Medical injury" is, the sustainment in the course of professional services rendered by_____ whether resulting from negligence, error, or omission of services.

The medical professionals cited herein by the plaintiff have quite palpably deviated from the expected standard of care applicable to medical professionals.

The standards of care for transgender individuals states that care must be on par with civilized society.

The definition of adequate medical care is, the care that society expects that prisoners will be afforded given that society does not expect that care will be given by incompetent professionals.

Necessary medical care is that which is prudent and necessary to alieviate the suffering of the plaintiffs condition.

To determine the need a specialist must be utilized inorder that the patient does not suffer further injury, illness if the Doctor is incompetent to treat the patient.

Treatment by UNQualified professionals Is "deliberate indifference."

Deliberate indifference is that which violates the 8th amendment.

"Professionals who refuse to verify a record before they enter it as a statement of fact in a petitioners record are deliberately indifferent to the patients needs."